PAT LUNDVALL (NSBN 3761)
JACQUELYN S. LELEU (NSBN 7675)
McDONALD CARANO WILSON LLP
2300 West Sahara Avenue, Suite 1000
Las Vegas, Nevada  89102
Telephone: 702.873.4100
Facsimile:  702.873.9966
plundvall@mcdonaldcarano.com
jleleu@mcdonaldcarano.com

*Attorneys for Defendant Tutor-Saliba*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| NANCY CARMINA BALDENEGRO, an individual,<br><br>        Plaintiff,<br>v.<br><br>TUTOR-SALIBA CORPORATION, a foreign corporation; DOES I through X, inclusive; ROE Corporations I through X.<br><br>        Defendants. | CASE NO.:   2:11-cv-00714-JCM-GWF |

### ORDER

Presently before the court is defendant Tutor-Saliba Corporation's ("Tutor-Saliba") motion for summary judgment (doc. #36).  Plaintiff Nancy Carmina Baldenegro ("Baldenegro") filed an opposition to defendant's motion for summary judgment (doc. #37-42). Tutor-Saliba filed a reply in support of its motion for summary judgment (doc. #46).

The court having reviewed the aforementioned briefs submitted in support of and in opposition to Tutor-Saliba's motion and having entertained the oral arguments of counsel, and good cause appearing therefor, hereby makes the following findings of fact and conclusions of law.

## I. Undisputed Facts

Tutor-Saliba is a building and heavy civil works general construction company (doc. #36, Ex A). Tutor-Saliba was the general contractor responsible for constructing the Wynn Encore located in Las Vegas, Nevada which began construction in April 2006 (hereinafter referred to as the "Wynn Encore Project") (doc. #36, Ex A). Between February 26, 2007 and June 6, 2007, Baldenegro worked as a general laborer on the Wynn Encore Project (doc. #36, Ex B and Ex C).

Tutor-Saliba was also the general contractor responsible for constructing the Planet Hollywood Towers located in Las Vegas, Nevada which began construction in January 2006 (hereinafter referred to as the "Planet Hollywood Project") (doc. #36, Ex A). Between June 12, 2007 and August 8, 2007, Baldenegro worked as a general laborer on the Planet Hollywood Project (doc. #36, Ex D and Ex E).

After her employment at the Planet Hollywood Project ceased, Baldenegro worked for Perini Building Company[1] on the City Center Project, located in Las Vegas, Nevada, from August 10, 2007 until March 3, 2009 (hereinafter referred to as the "City Center Project") (doc. #36, Ex F at p. 70:23 – 71:3 and Ex G). The Wynn Encore Project, the Planet Hollywood Project, and the City Center Project were all union contracted projects covered by collective bargaining agreements (doc. #36, Ex F at p. 70:13 – 71:3 and Ex H at p. 32:18-24).

On February 26, 2007, Baldenegro was sent to the Wynn Encore Project by the Laborers International Union Local #872 (doc. #36, Ex B). The Superintendent for that project was Joel Burch and the General Foreman for the area Baldenegro was assigned to was Kanda Bonty ("Bonty") (doc. #36, Ex F at p. 117:8-14 and Ex A).

When Baldenegro arrived at the Wynn Encore Project site, she spoke with a Tutor-Saliba employee, Sergio Favela ("Favela") (doc. #36, Ex F at p. 102:11 – 102:25). Thereafter,

---

[1] Tutor-Saliba and Perini Corporation (of which Perini Building Company is a subsidiary) were merged and became wholly-owned subsidiaries of Tutor-Perini Corporation in September 2008. See doc #36, Ex A.

2

she met with Bonty and another unknown individual who then hired her (doc. #36, Ex F at p. 102:21 – 102:23 and 103:4-8). Upon Baldenegro's hire, Bonty instructed she be taken through new hire orientation which was conducted in both English and Spanish, and concerned Tutor-Saliba's employment policies and procedures (doc. #36, Ex F at p. 131:14-21). During the new hire orientation, employees are also provided a written packet of information to review and sign (doc. #36, Ex I and Ex J). In particular, employees are provided information regarding Tutor-Saliba's anti-harassment policy and procedure for reporting illegal harassment in the workplace (doc #36, Ex I, Ex J, and Ex H at p. 33:21 – 35:6, 89:7-23, and 90:10-13). Tutor-Saliba's Harassment Policy provides:

> It is the policy of our Company to provide a workplace free of unlawful and improper harassment of employees by other employees, supervisors, or non-employees, including but not limited to subcontractor or vendor employees. Harassment is considered an act of misconduct and may subject an individual to disciplinary action, up to and including termination. All supervisors and managers are responsible for implementing and monitoring compliance with this policy.
>
> Provisions:
> Harassment is defined as unwelcome or unsolicited verbal, physical or sexual conduct where submission is an explicit or implicit condition of employment, where submission or rejection of such conduct is used as the basis for making employment decisions, or which has the purpose or effect of substantially interfering with an employee's job performance or which creates a hostile working environment.
>
> Some examples of what may be considered harassment, depending on the facts and circumstances, are the following:
>
> 1) Verbal harassment, e.g., epithets, derogatory or vulgar comments or slurs, or jokes regarding race, sex, religion, ethnic heritage, age, physical appearance; threats of physical harm; or distribution of written or graphic material having such effects.
> 2) Physical Harassment, e.g., hitting, pushing, touching or other physical contact, or threats to take such action, or any physical interference with normal work or movement.
> 3) Sexual harassment, e.g., unwelcome or unsolicited sexual advances, demands for sexual favors, touching or other verbal or physical conduct of a sexual nature, offering employment benefits in exchange for sexual favors.

3

> PROCEDURE
> Employees who feel they are or have been subjected to any kind of harassment, coercion, or intimidation by anyone, whether by one of your co-employees, supervisor, a vendor, or subcontractor, we encourage you to immediately make a complaint with your supervisor or Tutor-Saliba's EEO Director, Sylvia I. Aguilar at (818) 362-8391, of the facts of the incident(s) and the name(s) of the individual(s) involved. If it is your supervisor who is causing the harassment, the employee should notify his/her supervisor's supervisor, or, Sylvia Aguilar who may be reached at the phone number listed above.
>
> Depending on the facts and circumstances, supervisors who become aware of any such harassment, whether it involves employee-to-employee conduct, or vendor/subcontractor to employee conduct, must promptly report the matter to the EEO Director, Sylvia I. Aguilar.
>
> If supervisors observe such harassment, they should take immediate action to stop it, and depending upon the facts and circumstances should also report it to the EEO Director.
>
> An employee who reports harassment will not suffer retaliation or any other job-related consequences. Failure to make a timely report could affect your rights.
>
> The EEO Director will investigate all such claims and take any appropriate disciplinary action promptly as is reasonable under the circumstances. To the extent possible, all complaints and related information will remain confidential except as to those individuals who need the information to investigate, evaluate, or take action in response to the complaint. In addition, the Federal Equal Employment Opportunity Commission, the California Department of Fair Employment and Housing and the Office of the Federal Contract Compliance investigate complaints of prohibited harassment in employment. The nearest office is listed in the telephone book.
>
> If you have any questions concerning this policy, please feel free to contact the EEO Director, Sylvia I. Aguilar at (818) 362-8391 in the Sylmar Office.

(doc. #36, Ex K). If Baldenegro had questions regarding this, or any other, company policy, there were a variety of different individuals available to her at each of Tutor-Saliba's projects

4

1   who could provide translation services and help her understand company policies and
2   procedures (doc. #36, Ex F at p. 232:17 – 233:10 and Ex H at p. 68:18 – 69:4).

3         At the time she began working at the Wynn Encore Project, Baldenegro had already
4   known, from her prior employment experiences, about her rights and knew that discrimination
5   and sexual harassment were prohibited (doc. #36, Ex F at p. 94:10 – 96:11).  Specifically, she
6   had already known that, if at any time she thought she was being harassed, she should report
7   that harassment to her employer (doc. #36, Ex F at p. 94:10 – 96:11).

8         While working for Tutor-Saliba at the Wynn Encore Project, Baldenegro worked with
9   Favela but he did not have any authority to fire her, discipline her, suspend her, change her
10  work schedule, change her work hours, and either increase or decrease her wages (doc. #36, Ex
11  F at p. 102:21-23, 105:5 – 106:11, and 106:14 – 110:9 and Ex H at p. 223:14 – 224:13).

12        On Thursday, May 3, 2007, Baldenegro passed out at the Wynn Encore Project and was
13  taken to the EMT station (doc. #36, Ex L).  While being treated at the EMT station, Baldenegro
14  told the EMT on duty, Jeff Harris ("Harris") that she was being sexually harassed by Sergio
15  Favela ("Favela") (doc. #36, Ex L).  Thereafter, Harris informed Peter Hansen ("Hansen"),
16  Tutor-Saliba's Manager of Safety, of Baldenegro's claims against Favela (doc. #36, Ex L).

17        Hansen immediately obtained Baldenegro's written statement against Favela, and had it
18  translated (doc. #36, Ex M and Ex L).  Hansen also ensured that Baldenegro was moved to a
19  different crew, away from Favela, and Hansen sent an email to Sylvia Aguilar n/k/a Sylvia
20  Corsini ("Corsini"), Tutor-Saliba's EEO Director, informing her of the situation (doc. #36, Ex
21  L).  Hansen faxed a copy of Baldenegro's written statement, as well as the typed translation, to
22  Corsini on Monday, May 7, 2007 (doc. #36, Ex M).

23        The very next business day, Tuesday, May 8, 2007, Corsini met with Baldenegro
24  regarding her claim against Favela (doc. #36, Ex N and Ex F at p. 144:15 – 145:2).  During the
25  meeting, Baldenegro informed Corsini that Favela had been making inappropriate comments to
26  her and had been acting in an inappropriate manner (doc. #36, Ex N).  According to
27  Baldenegro, Corsini spoke to her for almost an hour, was kind to her during the interview, and
28

just wanted to hear about what had happened to her in the workplace (doc. #36, Ex F at p. 169:3-15 and Ex H at p. 74:22-25).

Between May 8, 2007 and May 10, 2007, Corsini continued her investigation by speaking to several of Baldenegro's co-workers, including Favela (doc. #36, Ex O, Ex P, and Ex H at p. 59:1 – 60:2). Based upon the information gathered during the investigation, Corsini concluded that Favela had violated Tutor-Saliba's harassment policy (doc. #36, Ex Q at NCB000518). Favela was terminated on Friday, May 11, 2007 for violating company policy and his termination paperwork noted that he was not eligible for rehire (doc. #36, Ex R).

Between June 1, 2007 and December 31, 2007, Tutor-Saliba laid off approximately 400 union trade employees at the Wynn Encore Project as the project neared completion (doc. #36, Ex S). Out of those, approximately 40 laborer trade employees were laid off in the month of June 2007, including Baldenegro who was laid off on June 6, 2007 (doc. #36, Ex F at p. 145:13-14 and 151:19-24 and Ex S).

Favela did not have any input into the decision regarding Baldenegro's layoff from the Wynn Encore Project (doc. #36, Ex F at p. 102:21-23, 105:5 – 106:11, and 106:14 – 110:9). The alleged actions by Favela did not impact Baldenegro's ability to do her job and she believed she continued to do a good job despite his actions towards her (doc. #36, Ex F at p. 125:21 – 126:4).

After being laid off from the Wynn Encore Project by Tutor-Saliba, Baldenegro went back to the union hall for reassignment and, on June 12, 2007, she was sent to the Planet Hollywood Project by the Laborers International Union Local #872 (doc. #36, Ex D). The Superintendent for that project was Carlos Nevarez, who hired Baldenegro at that project (doc. #36, Ex F at p. 116:12-24).

After Tutor-Saliba fired Favela from the Wynn Encore Project, he also went back to the union hall for assignment and, on June 25, 2007, he was sent to the Planet Hollywood Project by the Laborers International Union Local #872 (doc. #36, Ex T). On July 9, 2007, Corsini (Tutor-Saliba's EEO Director) learned that Favela was working at the Planet Hollywood Project and he was immediately terminated (doc. #36, Ex U and Ex Q at NCB000519). In

addition, a letter was sent to the Laborers International Union Local #872 informing them that Favela was not eligible to work on any Tutor-Saliba project (doc. #36, Ex V).

During her deposition, Baldenegro testified that she was not subjected to sexual harassment while working at the Planet Hollywood Project (doc. #36, Ex F at p. 110:18-21).

Between June 1, 2007 and December 31, 2007, Tutor-Saliba laid off approximately 230 union trade employees at the Planet Hollywood Project and, out of those, approximately 17 laborer trade employees were laid off in the month of August 2007, including Baldenegro who was laid off on August 8, 2007 when the phase of work she was hired to help complete was finished (doc. #36, Ex E and Ex S).

After being laid off from the Planet Hollywood Project by Tutor-Saliba, Baldenegro again went back to the union hall and, again within a few days (on August 13, 2007), she was sent to the City Center Project by the Laborers International Union Local #872 (doc. #36, Ex W). Baldenegro remained employed at the City Center Project for almost two (2) years, until March 3, 2009, when she was laid off along with a number of other workers when the project neared completion (doc. #36, Ex H). At no time during her employment at the City Center Project did she make any complaints to management about harassment or retaliation (doc. #36, Ex F at p. 156:19 – 157:10). Furthermore, during her deposition, Baldenegro testified that she was not subjected to sexual harassment while working at the City Center Project (doc. #36, Ex F at p. 110:22-23).

## II. Summary judgment standard

Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996); Fed. R. Civ. P. 56(c). An issue is genuine only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party, and a dispute is material only if it could affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-9 (1986). The moving party bears the burden of informing the court of the basis for its motion, together with evidence demonstrating the absence of any genuine issue of

1   material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has
2   satisfied its burden, it is entitled to summary judgment if the non-moving party fails to present,
3   by affidavits, depositions, answers to interrogatories, or admissions on file, "specific facts
4   showing that there is a genuine issue for trial." *Id.* at 324; Fed. R. Civ. P. 56(c).

5   **III. <u>Discussion</u>**

6   Baldenegro filed suit against her former employer, Tutor-Saliba, alleging claims for
7   sexual harassment and retaliation. Tutor-Saliba submitted the present motion seeking summary
8   judgment as to all of Baldenegro's claims.

9   **A. Sexual harassment**

10  When determining an employer's liability for an employee's alleged harassment of
11  another employee, the first issue for determination is whether the employer can be held
12  vicariously liable for the harasser's actions. That issue begins with deciding whether or not the
13  harasser was plaintiff's supervisor or merely a co-worker. If there is no factual dispute
14  regarding the scope of the alleged supervisor's job duties, then the court may review those
15  duties and determine, as a matter of law, whether those specific duties are sufficient to classify
16  the individual as a "supervisor" for Title VII purposes. *See Faragher v. City of Boca Raton*,
17  524 U.S. 775, 796, 118 S. Ct. 2275 (1998); *see also Lamb v. Household Credit Services*, 956
18  F.Supp.1511, 1516 n.4 (N.D. Cal. 1997), *citing Horton v. Taylor*, 767 F.2d 471, 478 (8th Cir.
19  1985); *see also Rhodes v. Illinois Department of Transportation*, 359 F.3d 498, 506 (7th Cir.
20  2004) *citing Hall v. Bodine Elec. Co.*, 276 F.3d 345, 355 (7th Cir. 2002). Here, the court finds
21  no dispute regarding the scope of Favela's job duties and, therefore, may review those duties
22  and determine, as a matter of law, whether those specific duties are sufficient to classify Favela
23  as a supervisor for Title VII purposes.

24  An individual will qualify as a supervisor for purposes of imputing liability for sexual
25  harassment onto an employer when that individual has the power and authority to directly
26  affect the terms and conditions of the plaintiff's employment, i.e. the authority to make
27  decisions affecting the plaintiff with regard to hiring, firing, promotion, discipline, or
28  reassignment to significantly different duties. *See Faragher*, 524 U.S. at 807, 118 S. Ct. 2275;

8

*see also Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 765, 118 S. Ct. 2257 (1998); *see also Dawson v. Entek International*, 630 F.3d 928, 940 (9th Cir. 2011); *see also Burrell v. Star Nursery, Inc.*, 170 F.3d 951, 955 (9th Cir. 1999). The determination of whether an employee is a supervisor is not dependent upon job titles or formal structures within the workplace. *See Dawson v. Entek International*, 630 F.3d 928, 940 (9th Cir. 2011); *Ward v. Management Analysis Company Employee Disability Benefit Plan*, 135 F.3d 1276, 1284 (9th Cir. 1998) *citing* 2A C.J.S *Agency* § 7 (1972). Furthermore, "someone who merely relays other officials' instructions regarding work assignments and reports back to those officials does not have true supervisory authority." *See e.g.* EEOC Enforcement Guidance, No. 915.002, Section III.A. (June 18, 1999) (http://www.eeoc.gov/policy/docs/harassment.html); *see also Hall v. Bodine Elec. Co.*, 276 F.3d 345, 355 (7th Cir. 2002) (an employee merely having authority to oversee aspects of another employee's job performance does not qualify as a supervisor in the Title VII context).

Here, Favela was not Baldenegro's supervisor for purposes of imputing liability to Tutor-Saliba. Favela was not vested with authority to alter the terms and conditions of Baldenegro's employment. He could not fire her, discipline her, demote or promote her, or change her work schedule or pay. In addition, there is no evidence that Favela subjected Baldenegro to any tangible adverse employment action by "explicitly or implicitly condition[ed] a job, a job benefit, or the absence of a job detriment, upon [Baldenegro's] acceptance of sexual conduct," such that Tutor-Saliba could be held strictly liable for Favela's conduct, i.e. quid pro quo liability. *Craig v. M&O Agencies, Inc.*, 496 F.3d 1047, 1054 (9th Cir. 2007); *see Faragher*, 524 U.S. at 808; *see also Ellerth*, 524 U.S. at 754; *see also Holly D.*, 339 F.3d at 1170; *see Nichols v. Frank*, 42 F.3d 503, 510-511 (9th Cir. 1994).

Even if this court were to determine that Favela was Baldenegro's supervisor for Title VII purposes, Tutor-Saliba is entitled to rely on the *Ellerth/Faragher* affirmative defense to preclude a finding of liability. If an employee suffers no tangible adverse employment action at the hands of a supervisor, but the harassing conduct was severe or pervasive, i.e. hostile work environment liability, an employer may avoid liability and assert what is known as the

*Ellerth/Faragher* affirmative defense where (a) "the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior," and (b) "the plaintiff unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Ellerth*, 524 U.S. at 765, 118 S.Ct. 2257; *see Holly D. v. California Institute of Technology*, 339 F.3d 1158, 1177 (9th Cir. 2003). Such issues are resolvable on summary judgment where the "raw facts are undisputed or assumed in favor of the plaintiff" and "no reasonable jury could decide . . . in the plaintiff's favor." *Reed v. MBNA Marketing Systems, Inc.*, 333 F.3d 27, 34 (1st Cir. 2003).

Here, the undisputed facts support Tutor-Saliba's ability to assert the *Ellerth/Faragher* affirmative defense. First, Tutor-Saliba exercised reasonable care to prevent sexual harassment by conducting a new hire orientation (in both English and Spanish) which Baldenegro attended and by providing Baldenegro with a copy of its sexual harassment policy which she signed for acknowledged. *See Montero v. AGCO Corp.*, 192 F.3d 856, 860 (9th Cir. 1999) (basis for determining whether employer exercised reasonable care to prevent sexual harassment). Furthermore, Tutor-Saliba's harassment policy defined prohibited harassment, identified to whom Baldenegro should complain if she believed she was being harassed, described the discipline to which employees may be subjected if they violated the policy, and strictly prohibited retaliation. *Id.*

Second, Tutor-Saliba also exercised reasonable care to promptly correct any sexually harassing behavior. It is undisputed Baldenegro fainted at the jobsite on May 3, 2007, that Corsini was informed of the harassment the day after Baldenegro fainted (May 4, 2007), that Corsini commenced her investigation on the next business day (May 7, 2007), that Corsini continued her investigation by speaking to Baldenegro and several of Baldenegro's co-workers, including Favela, that Corsini concluded her investigation on May 10, 2007 and, as a result of the investigation, Favela was terminated on May 11, 2007.

Finally, although Baldenegro alleged that the harassment by Favela began within a week or so of her starting work on the Wynn Encore Project (doc. #1 at ¶ 21 and 24), Baldenegro did not report such harassment until the first week in May, 2007. Where the

employer established and disseminated an adequate policy, "[i]f the plaintiff unreasonably failed to avail herself of the employer's preventive or remedial apparatus, she should not recover damages that could have been avoided if she had done so." *Faragher*, 524 U.S. at 767. Therefore, because Baldenegro has failed to set forth facts demonstrating that she reported Favela's behavior prior to the first week in May, she has failed to set forth facts or create an issue of fact demonstrating that Tutor-Saliba failed to properly respond once it learned of Favela's harassment. Therefore, Tutor-Saliba has proven its entitlement to the *Ellerth/Faragher* affirmative defense as a matter of law and summary judgment in favor of Tutor-Saliba on Baldenegro's sexual harassment claims is warranted. *See e.g. Penska v. Nevada*, 2007 WL 2571987, *9 (D. Nev. 2007).

### B. Retaliation

To establish a prima facie case of retaliation, a plaintiff must show: (1) she engaged in a protected activity; (2) she suffered a materially adverse action; and (3) there was a causal connection between her protected activity and the adverse employment action. *See Hashimoto v. Daltoni*, 118 F.3d 671, 679 (9th Cir. 1997). If the plaintiff is able to establish this prima facie case, then the burden of production shifts to the employer to advance legitimate, non-retaliatory reasons for any adverse actions taken against the plaintiff. *See Miller v. Fairchild Industries, Inc.*, 797 F.2d 727, 730-31 (9th Cir. 1986). If the employer meets this burden, the plaintiff must then show a triable issue of material fact as to whether the defendant's stated reason is "mere pretext for unlawful discrimination." *Hawn v. Exec. Jet Mgmt., Inc.*, 615 F.3d 1151, 1155 (9th Cir. 2010).

Here, with respect to Baldenegro's allegations that she was not laid off as the projects completed but was, instead, terminated because of her complaints against Favela, Baldenegro has failed to provide any facts which would demonstrate that the layoffs were connected to the claims and charges brought by her. Tutor-Saliba presented evidence showing a legitimate, non-discriminatory reason for her termination. Specifically, between June 1, 2007 and December 31, 2007, approximately 400 union trade employees were laid off from the Wynn Encore Project as the project neared completion, and approximately 230 union trade employees were

laid off from the Planet Hollywood Project as the phase of work she was hired to help complete was finished. In fact, approximately 40 laborers were laid off from the Wynn Encore Project during the same month (June 2007) Baldenegro was laid off and, approximately 17 laborers were laid off from the Planet Hollywood Project during the same month (August 2007) as Baldenegro.

Regarding Baldenegro's claims that her co-workers treated her differently, that she was forced to work alone, that she was assigned to a different work area, that she was required to see and deal with Favela at the Planet Hollywood Project, or that her supervisor stared at her, those actions do not suffice as adverse employment actions for purposes of a retaliation claim. "[O]nly non-trivial employment actions that would deter reasonable employees from complaining about Title VII violations will constitute actionable retaliation." *Brooks v. City of San Mateo*, 229 F.3d 917, 928 (9th Cir. 2000). The Supreme Court clarified that an adverse action, for the purposes of a retaliation claim, must be "materially adverse" such that it is likely to dissuade a reasonable employee from making or support a charge of discrimination. *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 67-68, 126 S. Ct. 2405 (2006). "The adversity of an employment action is judged objectively" and "not everything that makes an employee unhappy is adverse action." *Vasquez v. County of Los Angeles*, 307 F.3d 884, 890 (9th Cir. 2002). To that end, "mere ostracism in the workplace is not enough to show an adverse employment decision." *Strother v. S. Cal. Permanente Med. Group*, 79 F.3d 859, 869 (9th Cir. 1996); *see City of San Mateo*, 229 F.3d at 929; *see also Keyser v. Sacramento City Unified Sch. Dist.*, 265 F.3d 741, 753 n.5 (9th Cir. 2001); *see e.g. Kortan v. Cal. Youth Auth.*, 217 F.3d 1104, 1107-08 and 1112-13 (9th Cir. 2000).

. . .

. . .

. . .

. . .

. . .

. .

Therefore, because Baldenegro failed to provide any facts which would support of her claim that she was terminated because of her protected activity or that Tutor-Salba's proffered reason was pretextual, summary judgment in favor of Tutor-Saliba on Baldenegro's retaliations claims is warranted.

**ACCORDINGLY, BASED UPON THE FOREGOING, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that Tutor-Saliba's motion for summary judgment is **GRANTED**.

DATED this 4th day of February, 2013.

_____
UNITED STATES DISTRICT JUDGE